UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JAMES E. JACOBSON, JR., individually and behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>    v.<br><br>STATE OF OREGON; OREGON HOUSING & COMMUNITY SERVICES DEPARTMENT; KATIE CUSTER, in her official capacity as Interim Director of OHCS; and KENNY WILSON, in his official capacity as State Economist,<br><br>           Defendant. | Case No. 3:25-cv-01303-AR<br><br>**ORDER TO AMEND** |

**ARMISTEAD, United States Magistrate Judge**

Plaintiff James Jacobson, representing himself, brings this action against defendants State of Oregon, Oregon Housing & Community Services Department (OHCS), Interim Director of OHCS, Katie Custer, and state economist, Kenny Wilson, in their official capacities. On behalf of himself and a putative class, Jacobson alleges violations of the Fair Housing Act (FHA), Title II of the American with Disabilities Act (ADA), § 504 of the Rehabilitation Act (RA), and

Oregon's elder abuse statute, ORS § 124.100. Jacobson also brings Fourteenth Amendment claims under 42 U.S.C. § 1983 and other constitutional claims as their own causes of action. Also pending is Jacobson's request for leave to appear *in forma pauperis* (IFP) (ECF 5). The court's review of Jacobson's IFP request reveals that he cannot afford the filing fee and his IFP request (ECF 1) is therefore GRANTED. Yet Jacobson's complaint contains several deficiencies that must be corrected for this lawsuit to go forward.

## BACKGROUND

Jacobson is a 69-year-old resident of Gresham, Oregon. He began receiving social security disability benefits in 2010. Those benefits converted to the retirement-age social security benefit five years ago. Jacobson's social security benefits are his only source of income. (Compl. ¶ 11, ECF 2.)

In January, Jacobson received a written notice informing him that, on September 1, 2025, his landlord was raising his monthly rent from $1,050 to $1,168 in accordance with ORS § 90.323. (Compl. ¶ 20.) ORS § 90.323 (along with ORS § 90.324) establish the amount and frequency with which a landlord may increase a tenant's rent. The law also provides tenants with a private right of action against landlords who raise their rent greater than what the statutes permit. ORS § 90.923(6) ("A landlord that increases rent in violation of subsection (2)(d) or (4) of this section is liable to the tenant in an amount equal to three months' rent plus actual damages suffered by the tenant."). Jacobson does not contend that the rent increase violates § 90.323. Rather, he takes issue with the fact that the permitted annual rent increases (between 9 and 10 percent) outpace the annual cost-of-living-adjustment (COLA) to social security benefits (around 2.5 percent), creating a "gap" that he and other similarly situated Oregon tenants cannot absorb.

Page 2 – OPINION AND ORDER
*Jacobson v. State of Oregon, et al*, 3:25-cv-01303-AR

(Compl. ¶ 3.) Given that gap, he contends that § 90.323 results in disparate impact to disabled individuals living on fixed incomes. Due to his upcoming rent increase, Jacobson claims he is "facing displacement due to a corporate landlord who refuses to negotiate in good faith." (*Id.* ¶ 31.)

## LEGAL STANDARD

The court screens cases when a plaintiff is proceeding without prepayment of fees based on an inability to pay them—that is, when a plaintiff proceeds *in forma pauperis*. For *in forma pauperis* cases, Congress directs that "the court shall dismiss the case at any time if the court determines that the action is: (1) "frivolous or malicious;" (2) "fails to state a claim on which relief may be granted;" or (3) "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). The court's screening obligation includes determining whether a plaintiff's claims are capable of being tried by this court, or in other words, are cognizable claims.[1]

The court is generous in construing the pleadings of self-represented plaintiffs, giving the plaintiff the benefit of doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Self-represented plaintiffs are "entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (per curiam). "Although a *pro se* litigant . . . may be entitled to great leeway when the court

---

[1] *See, e.g.*, *O'Neal v. Price*, 531 F.3d 1146, 1151 (9th Cir. 2008) ("After a prisoner applies for *in forma pauperis* status and lodges a complaint with the district court, the district court screens the complaint and determines whether it contains cognizable claims. If not, the district court must dismiss the complaint."); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners.").

Page 3 – OPINION AND ORDER
*Jacobson v. State of Oregon, et al*, 3:25-cv-01303-AR

construes his pleadings, those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).

## DISCUSSION

### A.    *Eleventh Amendment*

The Eleventh Amendment grants states and state agencies immunity from citizen lawsuits in federal court. U.S. CONST. amend. XI.; *see also Regents of Univ. of Cal. v. Doe*, 519, U.S. 425, 431 (1997) (explaining that Eleventh Amendment immunity extends to state and state agencies). State officials acting in their official capacities are also immune from suit under the Eleventh Amendment. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-46 (1993) (explaining that Eleventh Amendment immunity extends to state officials acting on behalf of the state); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64-66 (1989) (explaining that state officials sued in their official capacities are not "persons" subject to civil rights suits under 42 U.S.C. § 1983).

Against all defendants, Jacobson brings constitutional claims, some under § 1983 and others as their own causes of action, as well as FHA, ADA, RA, and elder abuse claims. He seeks declaratory and injunctive relief and monetary damages. (Compl. ¶ 8.) However, Jacobson's complaint is not clear as to the *specific* relief he seeks, under *which* statute, and from *which* defendant. Regardless, Eleventh Amendment immunity prohibits federal lawsuits against "the State or its agencies for all types of relief, absent unequivocal consent by the state." *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) (citing *Pennhurst v. Halderman*, 465 U.S. 89, 100 (1984). So, for most of Jacobson's claims, defendants are categorically immune from suit in

Page 4 – OPINION AND ORDER
*Jacobson v. State of Oregon, et al*, 3:25-cv-01303-AR

federal court because they have not consented or otherwise waived immunity. That said, there are exceptions to Eleventh Amendment immunity. Relevant here is (1) abrogation; (2) the *Ex parte Young* doctrine; and (3) waiver. Should he choose to amend his complaint, Jacobson must allege sufficient facts for those doctrines to apply.

*FHA*. An exception to Eleventh Amendment immunity exists when Congress has abrogated the state's immunity by federal legislation. *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-54 (2011). Jacobson argues that Congress abrogated Oregon's Eleventh Amendment immunity for claims brought under the FHA; he seeks punitive damages and attorney fees under 42 U.S.C. § 3613(c). (Compl. at 18.) To support his argument that Congress abrogated state immunity for FHA claims, Jacobson cites *U.S. v. Georgia*, 546 U.S. 151 (2006). (Compl. ¶ 33.) That case, however, addressed abrogation under Title II of the ADA, not the FHA. 546 U.S. at 159. Absent consent or a waiver, defendants are immune from suit on Jacobson's FHA claim in this court. *See Gabriel v. General Serv.'s Admin.*, 547 Fed. Appx. 829, 831 (9th Cir. 2013) (holding that the FHA lacks the "unequivocal expression" necessary for an intentional congressional waiver of sovereign immunity).

*ADA*. Jacobson also argues that Congress abrogated Oregon's Eleventh Amendment immunity for ADA claims. For his disparate impact claim under Title II of the ADA and § 504 of the RA, Jacobson seeks compensatory damages caused by defendants' "deliberate indifference." He also seeks attorney fees. (Compl. ¶ 50.) It is unclear whether he seeks other relief, such as reasonable accommodation, under the ADA. Regardless, states and state officials are not *categorically* immune from claims brought under Title II of the ADA for money damages. *See Kohn v. State Bar of California*, 119 F.4th 693, 698 (9th Cir. 2024); and *Georgia*, 546 U.S. 151

(2006). When tasked with determining whether Eleventh Amendment immunity applies to an ADA claim, courts must conduct a case-by-case inquiry to answer the following questions:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Georgia*, 546 U.S. at 159.

Here, Jacobson does not plausibly allege a violation of Title II. At the dismissal stage, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 547 (2007). To support his claim, Jacobson alleges only that § 90.323 is a "service, program, or activity" of a public entity and, as applied, results in disparate impact to disabled individuals. That is insufficient, for two reasons. First, Jacobson has not pleaded that he has a disability as defined by the ADA or RA. *See Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (to state a claim under Title II or § 504, a plaintiff must first show they are a qualified individual with a disability). Jacobson alleges only that he was "found disabled" because of injuries sustained in the September 11 attacks on the World Trade Center, and that he began receiving social security disability benefits in 2010. (Compl. ¶ 11.) Generally, a disability under the ADA is a physical or mental impairment that substantially limits one or more major life activities. *See* 42 U.S.C. § 12102(1); *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014). Should Jacobson choose to amend his complaint, he must provide facts that show he meets that definition.

Next, even assuming Jacobson suffers a qualifying disability, he has still failed to state a cognizable claim under the ADA or RA because he has not alleged what public programs or

services defendants denied him access to, or participation in, due to his disability. *See Lovell*, 303 F.3d at 1052 (to state a claim under Title II or § 504, a plaintiff show must that he was excluded from participation in or denied the benefits of a public service, program, or activity). Section 90.323 limits annual rent increases and provides renters with a private right of action against landlords who violate the statute. As pleaded, Jacobson's complaint does not articulate what public services or benefits flow from § 90.323, nor does it articulate that the defendants, through whatever role they have with respect to § 90.323, have actually or effectively *denied* him access to services or benefits based on his disability. To bring a disparate impact claim under the ADA, Jacobson must allege facts in his amended complaint that show how § 90.323 has "the effect of denying meaningful access to public services." *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.,* 725 F.3d 1088, 1102 (9th Cir. 2013). For the court to evaluate whether Congress has abrogated Oregon's Eleventh Amendment immunity under *Georgia*, Jacobson must first plausibly allege a violation of the ADA.

Section 1983. Jacobson seeks prospective injunctive relief against Custer and Wilson under § 1983 for their alleged violation of his Fourteenth Amendment equal protection and due process rights.[2] (Compl. ¶¶ 51, 57.) Under what is known as the *Ex parte Young* doctrine, an exception to Eleventh Amendment immunity exists when a plaintiff seeks *prospective* injunctive relief against a state official acting in their official capacity. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 73 (1996) *(discussing Ex parte Young,* 209 U.S. 123, 159-60 (1908));

---

[2] Jacobson also seeks compensatory damages as part of his due process claim. (Compl. ¶ 57.) But state officials acting in their official capacity are immune from damages claims in federal court. *Brown v. Oregon Dep't of Corr.,* 751 F.3d 983, 989 (9th Cir. 2014).

*Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022). To state a § 1983 claim, Jacobson must allege two essential elements: (1) violation of a constitutional right; and (2) that the violation was committed by a person acting under color of state law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). To be individually liable under § 1983, a person must participate in the alleged deprivation. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000).

Here, Jacobson has not pleaded sufficient facts showing Custer or Wilson's personal involvement in the deprivation of his equal protection or due process rights.[3] To sustain a § 1983 claim against Custer and Wilson, Jacobson must allege facts, not simply conclusions, indicating their personal involvement in the deprivation of his civil rights. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Jacobson contends only that defendant State of Oregon enforces § 90.323, OHCS "implements" the law's rent-cap program, and Wilson calculates the rent-cap percentage under the statutory formula. (Compl. ¶¶ 12-15.) Those facts cannot by themselves establish the necessary "affirmative link or connection" between Custer and Wilson's conduct and the alleged constitutional violations. See *Arnold v. Int'l Bus. Mach.'s Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981) (explaining that § 1983 claims must allege "proximate causation," showing that "the actor knows or reasonably should know" that their actions "would cause others to inflict the constitutional injury[,]" beyond mere personal participation) (quoting *Johnson v. Duffy,* 588

---

[3]  The state official defendants may not be correctly named. Should he file an amended complaint, Jacobson should accurately name the state officials he seeks to sue.

F.2d 740, 743-44 (1978)). If Jacobson chooses to amend his complaint, he must allege facts that plausibly show that Custer and Wilson personally deprived him of his civil rights.

To that end, for a suit to proceed under *Ex parte Young*, Jacobson "must show that an injunction against a particular official would significantly increase the likelihood of relief." *Mecinas*, 30 F.4th at 900 (simplified). *Ex parte Young* does not require that Custer or Wilson have the power to "guarantee" the relief, but it does require them to have "some connection with the challenged actions." *R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1227 (9th Cir. 2023). Only a "modest" or "fairly direct" connection is required, but a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject a state official to suit. *Mecinas*, 30 F.4th at 903-04; *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013).

Jacobson asks the court to enjoin defendants "and all persons in concert with them" from enforcing any rent increase above 50 percent of the annual COLA. (Compl. at 18.) But on its face, § 90.323 does not provide the state or any of its agencies or officials with enforcement or administrative authority. Rather, it creates a private right of action for *tenants* to enforce the law against *landlords* who raise their rent above the maximum permitted percentage. *See* ORS § 90.323(6) ("A landlord that increases rent in violation of subsection (2)(d) or (4) of this section is liable to the tenant in an amount equal to three months' rent plus actual damages suffered by the tenant.") The court doubts whether Custer or Wilson have any enforcement authority to provide the prospective relief Jacobson seeks under § 1983.

For the court to determine whether the Eleventh Amendment bars his claims, Jacobson must show that Custer and Wilson have the requisite connection to the enforcement of § 90.323

Page 9 – OPINION AND ORDER
*Jacobson v. State of Oregon, et al*, 3:25-cv-01303-AR

such that an injunction against them would significantly increase the likelihood of relief. To the extent he seeks prospective injunctive relief under the FHA or ADA, Jacobson must similarly allege facts that show Custer or Wilson have a "fairly direct" connection with the enforcement of those laws.

*Elder Abuse*. Finally, a state may waive its Eleventh Amendment immunity by consenting to suit. *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). The State of Oregon provided a limited waiver of its sovereign immunity in *state* court under the Oregon Tort Claims Act (OTCA), but that is not a waiver of Eleventh Amendment immunity from suit in *federal* court. See *Est. of Pond v. Oregon*, 322 F.Supp. 2d 1161, 1165 (D. Or. 2004).

Here, Jacobson brings a tort claim for elder abuse against state defendants under ORS § 124.100. (Compl. ¶ 52.) Oregon did not waive their sovereign immunity in the passage of ORS § 124.100, thus the OTCA provides the exclusive remedy for a state-law elder abuse claim brought against public bodies or their employees acting within the scope of their employment. See *J.M. v. Major*, 2018 WL 7104882, at *9 (D. Or. Oct. 2, 2018) (holding that abuse of a vulnerable person is "tort" contemplated by the OTCA, and collecting cases in which the court dismissed claims brought under ORS 124.100 against public bodies or their employees). Because Oregon did not waive its Eleventh Amendment immunity in the OTCA, Jacobson's must bring his elder abuse claim in state court.

B.      **Constitutional Causes of Action**

*Dormant Commerce Clause*. Jacobson brings a cause of action under the dormant Commerce Clause of the U.S. Constitution. He alleges that § 90.323 "induces out of state

Page 10 – OPINION AND ORDER
*Jacobson v. State of Oregon, et al*, 3:25-cv-01303-AR

investors to acquire Oregon housing stock" to the "detriment of local tenants without advancing a legitimate local purpose" in violation of the dormant Commerce Clause. (Compl. ¶ 58.) As mentioned above, absent waiver or consent, defendants State of Oregon and OHCS are immune from citizen lawsuits in federal court under the Eleventh Amendment. If Jacobson intends to bring his dormant Commerce Clause claim against Custer and Wilson in their official capacities, he must (1) allege facts showing their personal involvement, as discussed above, and (2) bring his claim under § 1983. *Dennis v. Higgins*, 498 U.S. 439, 446-47 (1991) (holding that Commerce Clause challenges may be raised through § 1983).

He must also allege facts that show that § 90.323 benefits in-state economic interests at the expense of out-of-state economic interests to sustain his claim. *See Or. Waste Sys., Inc. v. Dep't of Env't Quality of State of Or.*, 511 U.S. 93, 99 (1994) ("Discrimination in the context of the dormant Commerce Clause means 'differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'"). In his complaint, Jacobson alleges the inverse: that § 90.323 benefits *out-of-state* investors and burdens *in-state* tenants. If Jacobson does not amend his complaint accordingly, his claim may be dismissed for failure to state a claim.

*Supremacy Clause*. Jacobson also brings a cause of action under the Supremacy Clause. U.S. CONST. art. VI cl. 2. He asserts that the "diversion" of his social security benefits toward "rent hikes" greater than social security COLAs are an impermissible "indirect levy" on his benefits. (Compl. ¶¶ 54, 41.) He alleges that "to the extent ORS 90.323 allows landlords to reach Social-Security benefits needed for basic subsistence, the statute stands as an obstacle to the

objectives of 42 U.S.C. 407(a) and is therefore pre-empted under the Supremacy Clause." (*Id.* ¶ 21.)

Here, Jacobsen has not stated a cognizable claim for relief because the Supremacy Clause is "not the source of any federal rights[] and certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015). Rather, it is a "rule of decision," instructing courts on "what to do when state and federal law clash." *Id.* Further, preemption of state law under the Supremacy Clause will not support an action under § 1983. *See White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 850 (9th Cir. 1987). If Jacobson chooses to amend his complaint, he may not bring a Supremacy Clause claim as its own cause of action *or* under § 1983.

C.    **Other Issues**

*Class Action*. Jacobson seeks to bring this case as a class action, pursuing claims for all Oregon tenants who exclusively rely on SSI benefits, meet the ADA definition of a disability, or have been subject to a rent increase permitted by § 90.323. (Compl. ¶ 46.) Jacobson is not an attorney. While he may represent himself in federal court, 28 U.S.C. § 1654, a non-attorney plaintiff may not pursue claims on behalf of other people. *McShane v. United States*, 366 F.2d 286, 288 (9th Cir. 1966); *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008). Should Jacobson choose to file an amended complaint, he may not pursue a class action without counsel.

*Preliminary Injunction*. Jacobson also seeks a preliminary injunction as part of his relief. A preliminary injunction is an "extraordinary remedy." *Winter v. Nat. Res. Def. Counsel*, 555 U.S. 7, 22 (2008). If Jacobson wishes to pursue a preliminary injunction, he must file a separate motion after he files his amended complaint. His motion should show (1) his likelihood of

success on the merits; (2) the likelihood that he will suffer irreparable harm without preliminary relief; (3) that the balance of the equities tips in his favor; and (4) that an injunction is in the public interest. *Id.* at 20; Fed. R. Civ. P. 65.

## CONCLUSION

To avoid dismissal of his lawsuit, Jacobson must file an AMENDED COMPLAINT by **September 15, 2025,** with sufficient factual allegations to determine whether the Eleventh Amendment bars his claims. He must also implement the changes described above in subsections (B) and (C). If Jacobson fails to do that, the court may dismiss this action. Jacobson's request for leave to appear *in forma pauperis* (IFP) (ECF 1) is GRANTED, however, the Clerk of Court must not issue process until further order of the court.

DATED: August 15, 2025.

_____
JEFF ARMISTEAD
United States Magistrate Judge